& Mr. Watkins Good morning, Your Honor. There is a related case that was argued on December 3rd. It's not technically related, but it has an extraordinary overlap in issues. It's the Reyes Appeal. I assume you're aware of it. When that appeal was argued, the central issue seemed to be statutory construction. Is Reyes listed as a related case? It is. Yeah. It is. It was argued before a different panel, clearly. And Ms. Reyes, unfortunately, died in December before her appeal could be decided. So it was submitted but not decided. That panel has not issued a decision yet, and there is a motion pending as to whether or not substitution is appropriate. Let me ask you something. Sure. There was some lack of clarity of 122nd what. Was it a battalion? There was the use of the word battalion and squadron. One implies one thing, one implies one's infantry, one's something else. I'd turn your attention to the appendix, if you would, please. Appendix pages 116 and 117. Yeah. And what you'll find here is that in very, very hazy lettering at the top, because the scans from the VA are terrible, on APPX 116, the second line says Squadron 122, and on APPX 117, all the way at the top, the second line says 122D Battalion. Yeah. Both existed. So which was he? So which was he? He claims to be... Sorry. He's 122nd Battalion, LGAF, on his form 23 affidavit. So why hasn't your client gone to the board for correction of military records? Yeah. It's futile. Why? Have people tried it and there's been no result? The Army Board has had a longstanding policy since just as the war ended that they would not hear any appeals from guerrillas, period, end of story. Fair enough. Where do we find that? How do I know? That's in the appendix to the briefs. We can look, for example, at the appendix to the opening brief that's the blue brief. If we look after the CAVC judgment decision, you'll see that there are a series of documents. The first one is from the Secretary of the Army, so we would be at ADDM-001. Okay. That's the first one from the Secretary of the Army on Philippine recognition. There's another one that follows on ADDM-002. Importantly, ADDM-003 is the Army Board's own memo, originally classified as secret, which states, in accordance with instructions received from the Executive Secretary, Army Board on correction of military records effective immediately, applications for correction of military records submitted by Filipino natives to establish service in the Army of the United States during World War II will not be docketed for consideration. And then that is followed by a memorandum from the Deputy Secretary of Defense. On the next page of the addendum, 004, that's a memo for the Secretary of the Army from the Deputy, again stating Filipinos lose. They can't go to the Army Board. We have another one, a memorandum from the Adjutant General. This one is Eugene Tar. It also says the guerrillas lose. They can't go to the Army Board to correct anything. In the reply brief, Mr. De La Cruz asserts that he clearly did serve before July 1, 1946, and he cites the roster JA-117. JA-117. Yeah. That's that list that's hard to read, but I really strained on it, and I don't see his name. His name is not there? Yeah. That's right. So that's the central problem in this case. The central problem is that De La Cruz- But you cited us to it. I'm sorry? You cited us to that page in support of that proposition. In the reply brief, tell me what page again, I'm sorry? 24. Oh, this is cited simply for the proposition that this document is very handy, this APPX-117. It's the roster of D Company Luzon Guerrilla Army Forces, so it's the LGAF 122nd Battalion. I'm familiar with the history. And you can see at the bottom of the document there are a couple stamps. Yeah. They're very hard to see. Reconstructed by Guerrilla Affairs. Yes. Reconstructed by Guerrilla Affairs, and there is another stamp to its left that bears a date, 24 April 1948. This is easier to see, Your Honor, if we look at the reply brief, in the addendum to the reply brief, there is a clean copy that makes it really easy to see. ADDM 040 attached to the gray brief. So you can see that there are two stamps. The point that I was trying to make in the reply brief simply was this. If a roster existed that stamped Reconstructed by Guerrilla Affairs Division and Approved in 1948 by Headquarters P-H-I-L-R-Y-C-O-M. Constabulary. I'm sorry? Constabulary or R-Y. Oh, I can tell you who that is. So P-H-L-R-Y-C-O-M is the headquarters of the Philippines Ryukyus, R-Y-U-K-Y-U-S Command. That's the U.S. Army. Okay. So if we look at the AGO Form 23 affidavit, at the very top of the affidavit, there is a processing unit that's listed on the very first line. You might look at this in the appendix. The Form 23 affidavit, again, isn't very clear, but it shows up twice. You can look at either one of them. So let's look at the last one because it's easiest. That's on page APPX257, second volume. That's where we'd find one of these copies of the affidavit. At the very top, the very first line says, Affidavit for Philippine Army Personnel. The very next line says, Affidavit, and it says H-Q-R-P-D. What that means is Recovered Personnel Division. That was the RPD. And the Recovered Personnel Division was of the Adjutant General Section of the headquarters of the Philippines Ryukyus Command, Phil-R-Y-C-O-M. That's the Army of the United States. What's the point here? I was trying to explain why it was important that we looked at that roster page. Recovered personnel, in U.S. Army terms, tends to mean people who were prisoners of war or invaders. In this context, it was used somewhat differently. In this context, the Recovered Personnel Division was tasked with figuring out who should be on a roster. Of guerrillas. Of guerrillas. That's right. Okay, but your problem is that he doesn't appear on one of these rosters, and the question is, how can that be addressed? Is your contention that the Board for Correctional Military Records has not performed its statutory obligation by not addressing these issues in connection with the Corrections Board procedure? Yes, since the 1940s. Okay, what does the statute say about the obligation of the Board? I believe it's in our brief. It says that they're supposed to adjudicate all matters related to military records. So I guess if we ordered them to do that, maybe they'd do it, right? Maybe yes, maybe no. It's the Army Board's policy, longstanding since the 1940s, that they don't touch guerrilla records. They are set in stone. Yeah, but maybe that's a misreading of the statute. The problem is, I understand your argument that the Form 23 is itself a military record. I have difficulty with that because it's really just an affidavit from your client saying that he qualified. There's nobody from the Army who passed on that or vouched for it or said it was correct. So there is evidence that he serves. It seems to me somebody has to make a determination as to whether, in fact, he served or not. And there are really only two alternatives here. One would be the VA, and the other one would be the Board for Correctional Military Records. There aren't any other alternatives, right? And the VA says it has to be the Board. And the Board says, from what I see, we won't do it. We won't do it, that's right. But when they say we won't do it, are they saying we won't do it with respect to Philippine guerrilla soldiers as opposed to a U.S. soldier? That's right. They're the only class of individuals I'm aware of who are excluded. So there's a difference in treatment then. I'm sorry? There's a difference in treatment. There sure is. How did they deal with people like Ferdig and the Americans who were not military personnel but went around and commissioned themselves and later got it recognized? Did they treat them as military personnel? I'm not entirely sure how to answer that question, but what I can tell you is this, that the winding down of the war around 1946 was chaotic in the Philippines. And what was found at that time was a collection of rosters that consumed two folders in somebody's office. It was not a collection of rosters that was complete for all of the guerrillas who had been serving all over the Philippines fighting against the Japanese with the United States Army. And so there's a lot of similar names as well. There are. This is true. But what happened was the Army first went through a process that started with, and I'd like to dispute the position that Judge Dyke, you articulated, which was that you have a hard time believing that this is an affidavit from the United States government. It is an affidavit that was blessed by the United States government for the following reasons. It was collected by the United States government. What's the evidence that was blessed, that it was vouched for? Okay. The evidence is attached. There's a field artillery officer who was deputized, if you know. And that's not all. The way this process worked was you had to be in a recognized guerrilla unit to be processed. You were processed as the war was coming to a close. And the processing was done to figure out should we keep you or not? And we need to create a record of you, of permanency. That processing was done by processing teams that were organized by the Army of the United States. They directed them. In fact, an officer. I understand what you're saying. But what does the record show about the Army's vouching for the accuracy of these Form 23 affidavits? I mean, so far as I can tell from the record, all it shows is that someone who claimed to be a member of a guerrilla unit would come in and fill out this form and swear to it. I don't see where the Army is vouching for this or saying this is a service record. That's my problem. Where do I find that? Today we have a DD-214. And it is the Army vouching for this is the record. Here's where I'm coming from. Lots of things in files are military records. A lethal authorization is a military record. All kinds of things are in a personnel file. Yes. And anything that an officer signs and puts into a personnel file, including a letter of reprimand, for example, which you haven't signed at all, is a military record. From that viewpoint, it strikes me that that's a military record. This isn't just a military record. It was the only equivalent that a Filipino guerrilla could have of what is today a DD-214. It was prepared by the Army of the United States. So where is the instruction to the people who are processing these to, let's say, separate the wheat from the chaff, to make a determination as to whether somebody who was allowed to sign one of these affidavits was in fact entitled to do so? How do I know that? Do you mean the one who served, or do you mean the summary court officer? The statement of one who served doesn't make it a military record. It's the Form 23. It's the attestation. It's the signature by Army personnel. But how do I know what that signifies? How do I understand that that's the Army vouching for this person's service?  I do understand what you're saying. And I would answer as follows. At the beginning of the appendix, there are a series of historical documents that were put before the CAVC. And that series of historical documents shows how the United States Army designed the form. And they modified the design of the form. Where is that in the record? That's what I thought. So if we go to the appendix, starting on appendix page 057, APPX 057, there are a series of memos that set forth how processing was to take place. This was all designed by Lieutenant General Eichelberger of the Eighth Army. And they worked together with the Sixth Army, and a policy was put in place specifically under the command of General MacArthur. They did things to this document such as, the United States Army said, you are going to ask a question on this document about, are you a female? And if so, state what you did. Okay, but that's just what the questions are. I understand. It doesn't say, where does it tell me that allowing, the Army's allowing somebody to fill out the form is somehow a record of that person's service? Well, there's a quote in here, and it's in our brief. In other words, if at the time, the idea was you couldn't sign this form, you couldn't be processed, unless we had some reason to believe you were a gorilla, or we had some record that you were a gorilla, maybe the form 23 is significant. But if anybody can just wander in and fill out a form 23, then maybe it doesn't have any significance. These documents that are in the appendix, starting at that page, APPX 057, and going through a very important document, which is circular number 142 on APPX 081. 081? Yes. If you look at the second page of that document, under the heading processing it states, when the tactical situation permits, all members of recognized gorilla forces who present themselves for the purpose will be processed. You had to be in a recognized force, and you had to present yourself to a processing team that was led by an officer from the United States Army. This wasn't just a document that somebody showed up with and said, will you please notarize it. It had much more significance. There was a plan in place. Isn't there some testimony in the record here from somebody who was knowledgeable about the process at the time as to how it worked? Is it not possible to have such testimony? I don't know how to get such testimony, and I certainly don't know how to get it in this record. De La Cruz was pro se through the filing of his informal brief. No, but we could remand and say we'd like to know what the processing involves, and you've got to compile a better record. My issue with that, Your Honor, is that what we really have is the documentary evidence that comes right out of the National Archives. These pages that you see in the appendix, I personally took digital pictures of them and put them in the appendix. I held the original documents at the National Archives in College Park. They're for real. They are the official U.S. government records. De La Cruz is 95 years old. I mean, the precipient witnesses to these acts are either dead or very, very aged. He was a young man at the time. He was a young man. So when he joined the guerrillas, he was 19. He was a teenager. And he joined just after. He lived in the north. He joined in 1943, right? That's right. And so before that. That's where he asserts he joined in 1943. That's right. And his affidavit of Philippine Army personnel says that. His brief story is that we had this thing called the Bataan Death March. 80,000 people walked north from the Bataan Peninsula on the island of Luzon. And they ended up at a prison camp. De La Cruz lived just to the northwest of the prison camp. 60,000 people made it there. 20,000 didn't. Most of them Filipinos. And so in that context of having witnessed, not far from him, a Japanese invasion which came from the north through where he lived. He was a rice farmer. He didn't graduate past the seventh grade. He made it through junior high school, at least a portion of it. Then he was a rice farmer for three years, and he joined the guerrillas because otherwise their life, as they knew it, was gone. Okay, but that doesn't tell me why I should rely on the Form 23 as a military record. I think the answer, Your Honor, is in these historical documents because I can't give you a percipient witness. I could go back and get testimony from somebody at the National Archives who would say, yeah, these are official records. I could get some testimony that there is a famous Army report from 1949. It's facially a military record. It is. It may not be accurate. It may not be a lot of things, but it's facially a military record. It is signed by the United States military. I agree. That's what military records are. I don't know how you could separate this from the words military record. On the top of it, it says it was created by the RPD, the Recovered Personnel Division. That's the United States Army. If we look through here, the Army looked for particular information. They wanted to know. It stands out. I mean, it's there. It's all here. And there's something else that's important about this document. There's a stamp on it. So this document was created in 1946, long before this benefit, the Filipino Veterans Equity Compensation, came into existence. The document was authenticated by the Philippine Army, by their Adjutant General's Office. I find it fascinating that he's drawing VA benefits. I find it fascinating, too. I don't understand how it's possible that the right hand at the VA is willing to give health care benefits to the guy and the left hand says, no, you're not legitimate, you didn't serve. But their answer is, whoa, maybe we'd like to, but it has to be authorized. And NARL doesn't do it. The problem here is that the VA is employing a standard that requires two pieces of evidence. They say, you can have this Form 23 affidavit, but if we don't find your name on that reconstructed roster, this is as good as shred. So assume that the Board for Correction of Military Records would do its function. Could they take that evidence and then correct that roster? Do they have the power to? My answer to that is yes. The Army's answer to that since the late 1940s is no. No, it's not. They won't do it. The answer is no, they won't. They won't do it. Why don't we ask Mr. Hockey about this? Thank you, Your Honor. Mr. Hockey? Will they or won't they, Mr. Hockey? I can't speak for the Army as to whether they would respond or how they would respond to it. I would characterize it as a proper request. But this isn't a proper request. Okay, one, has that policy changed since the order came down, don't consider any Filipino guerrillas? The policy... Beau Calloway says, look backwards. What I would refer the Court to is testimony before the House Subcommittee on Oversight and Investigations on June 24, 2014, addressing the Filipino Veterans Equity Compensation Fund, examining the Department of Defense and interagency process for verifying eligibility. I think you'll find there the testimony that you've been asking about earlier this morning, in which members of the VA, the National Personnel Records Center, and the Army testified before the House on how to address this issue with respect to folks coming in as part of this equity compensation fund but not finding their name on the proper roster. And what did they say? So to address your question, Judge Dyke, there was a chairman, Heck, at the time, asked, so is the AGA-0423 the acceptable document to demonstrate proof of service? And the representative of the Personnel Records Center said, no, not on its own. What they did in 1940, as I understand it, late 40s from reading this in preparation for today's argument, not that I thought it was wrong. Do we have that cited to us? No, I'm sorry, it's not in the briefs, and that's why I read the whole title for the Court's benefit, but I'd be happy to provide a copy. Why don't you provide a copy? Pardon me? Why don't you provide a copy? I will. But in here, basically, the issue that we've been talking about this morning was talked about before the House in 2014. There was several Filipino guerrillas who had issues and had even very strong evidence that they had participated in various activities during World War II. So what did they say at that time about the availability of the board remedy? The bottom line, I understand from reading this, is Congress understood that it was their problem. Whose problem? The guerrillas? No, it was Congress's problem. No. It was Congress. Chairman, final words, basically, were thanking the three representatives. All right, gentlemen, we appreciate your testimony, realizing that you are just a messenger and that you are interpreting the regulations and the laws as it was written, and it is incumbent upon us to make the necessary changes to be able to continue to try to expand the benefit to get to those that rightfully deserve. The issue, the Form 23 – Let me tell you what I'm thinking about, Mr. Hockey. In the context of the Court of Federal Claims and the Corrections Board, we have held, and Martinez recognized this, that it's appropriate to stay proceedings in the Court of Federal Claims to send people to the Board for Correctional Military Records to have the records corrected or not corrected. Why isn't that an appropriate remedy here? Why shouldn't we direct the Veterans Court to stay proceedings, to allow Mr. Dela Cruz to apply to the Corrections Board to correct his records so he appears on the roster and his claim can be processed appropriately? And in that connection, why doesn't the statute require the Corrections Board to perform that function? So I don't know what – maybe there's a military statute that would require the – I mean, we talked earlier about, obviously, the Board has duties imposed on it, the Board being the Military Correction Board. And I don't know why people haven't been – I heard earlier it was described as a futile process, but I haven't heard any discussion of why an application wasn't made and then the appropriate appeal taken to a court. Well, do you deny the documentation in which repeatedly the Board is told, don't look at the guerrillas? I understand that position to be what the Army is saying. I've read the documents. But I also, as a lawyer that appears before this and other courts regularly, recognizes that it's not necessarily the final word. But it's not – But have we ever said to them, hey, we order you to do this? I don't know if it's ever been presented to this court as part of an appropriate vehicle upon which this court could then provide that instruction. We have talked about that in one of these cases. We've said – We talked about it back in Soria in 1997 when we invited everyone to go and try to invoke a regular process upon which you go to the folks who are in control of this, the Army, not the VA, and ask them to fix this. This is truly pathetic in the real sense of the word, athos. These guys are old. They were just – I understand. But from our perspective, what we have here is a regulation from the Secretary which this court has already blessed as a valid implementation of its general evidentiary deciding powers. There's to be a correction. Not to that. Assuming – look, assuming that this individual risked way more than everything, because it wasn't just him, it was his family. We're not denying any of that, Your Honor. But what we're saying is this case here is before this court based upon the actions of the Secretary. And those actions, which were done in compliance with 38 CFR 3.203, have already been determined by this court in a presidential decision to be a valid exercise of its evidentiary deciding authority. And so that – In Soria, did we make a determination as to equal protection? There was not in Soria, but in Talon, and the court addressed the equal protection argument about generally Section 107, which is the rescission act, which this act follows up on. It basically awards these one-time payments to those folks who otherwise are eligible under the rescission act. And the D.C. Circuit and the Ninth Circuit have done as well. And the Ninth Circuit in Racinto in 2013, I think, held as much with respect to the Equity Compensation Act. What's the government's position going to be? For the Army? What's the government's position going to be if we tell the Board to take a fresh look and honest look at those records? The Board of Military Correction? Yeah. See, the problem is I cannot construct for you, Your Honor, a path by which you, I think, can do that here. I think that it requires an action on the part of the claimant to go and take advantage of whatever feudal right or not feudal right he might have and submit an application to the Military Correction Board. And when that board comes back and says, we're not going to dock at this or we're not going to, then you do something about it. You file a mandamus. You appeal to a district court. Look, Mr. Hockey, we're not going to send somebody off on a wild goose chase to do something which is feudal. So before we took that approach, we'd have to decide that it wasn't feudal to go to the Board for Correction of Military Records. And right now the Army says, no, we won't process that. If we're going to send this claimant off to the Corrections Board, we've got to make a determination as to whether there's a realistic possibility of a remedy, not on the facts of this case, but in terms of the obligation of the Board to make such determinations. And I think it would be helpful to us to know what the government's position is if this claimant did that, went to the Board and said, please show me as an enrolled member of the guerrilla forces so I can get my payment. Well, I mean, I have the legal response, which is I don't think this is the case to do that, Your Honor, even though you're talking about strapping one process on to the process that's actually at issue before this Court, which is the VA process. But the VA process looks back... Right, and this Court said that that's okay. So what we need to do is somehow get that vehicle before this Court under the right circumstances. Now, I'm getting the sense here that the Court doesn't want to hear that as a response, and all I can say, Judge Dyke, is that if you're... I can't stand here now and provide the path for you. The Army's not involved in this appeal. We would have to go back and figure out whether we could give some sort of response to an order like that, although I can't promise you that we wouldn't respond in a more legalistic fashion to say, I think that's a little bit out of bounds here. Because we do, frankly. The issue before this Court is reviewing the Veterans Court's decision, which is premised on this idea that 38.303 was a valid exercise of the agency's regulatory authority, which this Court's already said it was. So this gets us back to, yes, this is terrible. Mr. Dela Cruz has waited a long time. We don't know the answer. VA doesn't know the answer. Maybe the Army knows the answer, but I'm not sure. If you read this 2014 thing, it's not clear that even a person who had... Well, clearly what you can discern from reading this hearing testimony is that a rule of Form 23 is not the be-all and end-all. What happened at the time was that Form 23 was submitted, and then the Army looked through all of its records because it could only accept as recognized people under what became the Rescission Act, those people who were working in guerrilla operations that were, I think, I'm going to use the word sponsored, but I'm roughly using that word, by the United States Army. Under the command of a responsible commander. Exactly. They had, like, criteria. Responsible is a T word. I mean, in an odd way, to me, as a layman, I thought it was an odd way to describe guerrilla activity, but there's a sort of control aspect to it. Are they responsible to someone who can tell them what to do? Right. So simply because someone was a guerrilla in the Philippines during the Second World War doesn't mean they qualified for either 107 or this equity compensation fund. And simply because they filled out a Form 23 doesn't mean that they qualify. There was a lot of people that filled out these Form 23s that weren't determined to have been part of the proper, if you will, guerrilla unit. I don't know the answer with respect to Mr. de la Cruz. He suggests otherwise by saying some of his colleagues, who he was with, were covered. I don't know. So what if we entered an order asking you to tell us whether there's an alternative remedy here before the corrections board? We've argued in the past that that would be the only remedy available. Right. We'd like to know whether it's a real remedy. But I think, again, the answer is go there, and if you're disappointed, do something about it. No, we're not going to send somebody to perform a useless act. I understand that this court doesn't want to do that, but I can't. We need to know whether this is a realistic possibility or whether it's a futile gesture. The 1929 Geneva Convention, which followed the Hague rules, said that a prisoner of war, and this is how they define any fighter, is a member of the armed forces of a signatory power or any member of a guerrilla or volunteer unit which is not part of the armed forces, which meets the test, including under the command of a responsible commander. And those folks who were fighting for those various colonels and self-made colonels and generals and so on either answered to the United States or didn't. There were some that didn't. But there's the path that you're going to have to follow in the records to see if that 122nd Battalion, Company D, was part of something commanded by someone to whom the United States gave recognition. That's the one key as to whether they're recognized guerrillas. The other question, of course, is was Mr. Delacruz part of Delta Company? Yes, and I think that's the more difficult question. Except he has enough evidence for the VA to be giving him medical care.  and the benefit side. The benefit side is very careful in providing money through benefits. They're not careful about the health care? No, I think it's not that it's not careful about health care. It's just that there have been decisions made within the VA where in certain circumstances it's important that people get health care. It's not necessarily discounting the importance of receiving benefits, but that when you were talking about health care versus benefits, there is a recognized understanding that everything should be done to provide health care. I want to talk about that testimony, the two congressional hearings that were held in 2014. There was some testimony that was put in during the second of those hearings in 2014, both before the House of Representatives, and they are cited in our reply brief. There is a hyperlink that gets you to both sets of testimony. I'm happy to put it in a 28-J letter. In that second hearing, testimony was put in by Major General Antonio Toguba, and he attached to his testimony a Board of Veterans' Appeals opinion, non-precedential, for an individual named Pablo. In that opinion, the single judge at the board said effectively, I'm going to weigh the evidence. We're going to use a best evidence rule here, and just because you can't meet all of the qualifications for the NPRC to say you qualify, I'm the VA, and this statute tells me that I have to determine eligibility because it says a definition for eligible person, and that judge weighed the evidence and found in favor of the individual, and he was granted the benefit. Then something miraculous happened. Seven months later, and this is not in the testimony, Major General Toguba is a warrior, he's not a lawyer, and he didn't know to put into Congress to let them know that the Pablo case had an anomaly happen. Seven months after the single judge decision, the vice chairman of the Board of Veterans' Appeals issued an order requiring reconsideration of the opinion sua sponte. On the motion of the board, the single judge was removed, and a three-judge panel was put in place who then completely gutted the opinion. Pablo then took it up to the CAVC, and the VA did what they do best. They settled. They gave him the $15,000. They called him a veteran. It's in the settlement agreement, and they made the whole problem go away so that this would never see the light of day. Okay, well, that's interesting but not necessarily relevant. The point is the best evidence rule. I have a problem with ABCMR. They take a year and a half to do anything. He'll be 96 and a half by then. We could suggest that they do it more quickly. What is the problem with going to the corrections board if, in fact, we're able to discern that they will consider this on the merits? I can predict what's going to happen. They're going to say no is what they do on almost everything, and then I'm going to have to go to a district court to fix it, and then he'll not make it. He's almost 100, right? He's 95. You can also take a writ of mandamens at that point. I can try. But time is of the essence with this individual. He's 95, right? We're out of time. We've been doing this for a decade, bouncing back and forth four times to the board, twice to the CAVC. Enough is enough. This statute says a definition for an eligible person, and it clearly states to us that certain things apply. Certain things apply like definitions in 38 U.S.C. 101. Okay? We're showing you a path. I understand, and I appreciate the path, but as you can tell, it in part frustrates me. I understand that too. But you ought to be able to get off the ground like a sprinter on this. I understand. And if we encourage them to act either to say yay or nay quickly. My experience with ABCMR has been poor. They are a denial board as far as I am concerned. It is a rare event to get a win there. If they refuse to act, take a writ. We could do that. But it's not just refusing to act. They will give us an opinion, and it will simply deny. In fact, this was tried in the companion case. A denial on what ground? They will deny on the ground that they do not reopen the records at this point after the 1940s. But that's what we're trying to find out. No one is suggesting that your client be told to pursue a remedy which is futile. I understand. We need to make a determination as to whether the board is willing to address these kinds of claims on the merits or not. I just want to give you a point of information. It's not a companion case, but in the related case, which is Feliciano Reyes, who passed away in December, my co-counsel, Mr. Mastriani, actually sent an inquiry to the Army Board for the Correction of Military Records, attempting to do exactly this, and got back a short response saying no. No what? No, we won't hear the appeal at ABCMR with respect to correcting the record to show that she was a guerrilla. Because they have no jurisdiction over such determination? I don't have the letter in front of me. I'm sorry, I can't tell you. Why don't you submit the letter so that we can see it? Happy to do that. My problem here is that… Right away? Yes, right away. Agreed. The problem here is that we have an explicit definition of an eligible person here. We also have a section that says, the Secretary shall administer the provisions of this section in a manner consistent with applicable provisions of Title 38 and other provisions of law, and shall apply the definitions of Section 101 in the administration of such provisions, except to the extent otherwise provided. Just because VA has this 3.203 regulation, first of all, this does not say anything about regulations. It says applying laws. It doesn't say anything about their regulation. Just because they have a regulation doesn't mean that they can override what Congress has told them to do, which is measure eligibility. I think we're about out of time here. I appreciate your time. Thank both counsel. Case is submitted. Thank you. All rise.